OPINION
{¶ 1} Defendant-Appellant, Ian Conley, appeals a judgment of the Marion County Court of Common Pleas, sentencing him upon his convictions for possession of cocaine, trafficking in cocaine and tampering with evidence. On appeal, Conley asserts that the trial court erred by denying his motion to suppress certain statements he made while in the Multi-County Jail in December of 2003. Additionally, Conley asserts that the evidence was insufficient to support his convictions for possession of cocaine, trafficking in cocaine and tampering with evidence and that his conviction for possession of cocaine was against the manifest weight of the evidence. Finally, he asserts that his convictions of possession of and trafficking in cocaine are allied offenses of similar import.
 {¶ 2} Finding that Conley's statements were properly before the court; that there is sufficient evidence in the record to support his convictions for possession of and trafficking in cocaine; that the conviction for possession of cocaine is not against the manifest weight of the evidence; and, finally, that possession of and trafficking in are not allied offenses of similar import, we affirm the judgment as to Conley's convictions for possession of and trafficking in cocaine. However, finding that no evidence was presented at trial to support Conley's conviction for tampering with evidence, we reverse the judgment as to Conley's conviction on that charge.
 {¶ 3} On the night of December 9, 2003, after receiving information from a confidential informant that crack cocaine was being sold at 489 West Church Street in Marion, Ohio, the police conducted a raid on the residence. Initially, when the police entered the apartment, Conley laid down on the bathroom floor and put his hands on his head. Conley was lying on top of a substantial amount of currency, which was spread out all over the floor around him.
 {¶ 4} Upon being searched, Conley was found with over seven hundred dollars in cash on his person. The police did not find any illegal drugs on Conley. During the raid, Marshton Mayes was found in a bedroom and Alissa Columber and Brenda Lute were found in another bedroom. Lute was found with a twenty-dollar rock of crack cocaine in her pocket and admitted to having smoked crack cocaine in the house.
 {¶ 5} Additionally, the police found crack cocaine, a crack pipe, a couple sets of scales, a razor blade and steel wool. The police also found a television set connected to a camera located outside on the front porch of the house. The television showed a view of the front porch when the police came into the house. Finally, cash was found in the living room, in the bathroom and in the bedroom, totaling over eleven hundred dollars. As a result of the raid, Conley, Mayes, Lute and Columber were arrested.
 {¶ 6} The following morning, while in the Multi-County Jail, Conley was served by Officer Casey Thomas with a warrant to seize a urine sample. Thomas also presented Conley with a notice, which included the following language:
If you prevent officers from collecting your urine sample in order toprevent it from being tested, we will request that the Marion CountyProsecutor's Office prosecute you for tampering with evidence, inviolation of R.C. 2921.12, which is a felony of the third degree.
 {¶ 7} After being presented with the search warrant and the notice regarding the search warrant, Conley declined to give Thomas a urine sample and stated that "he [would] tell the judge that [he] smoked crack." Thomas took no further action to obtain the urine sample and left Conley's cell.
 {¶ 8} On December 31, 2003, Conley was indicted for possession of cocaine in violation of R.C. 2925.11(A) (C)(4), a felony of the fifth degree, trafficking in cocaine in violation of R.C. 2925.03(A) 
(C)(4), a felony of the fifth degree, tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree, and possession of criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree.
 {¶ 9} In June of 2004, Conley filed a motion to suppress the statement that he had made to Officer Thomas when Thomas served Conley with the search warrant for the urine sample. Subsequently, the State filed a response to Conley's motion.
 {¶ 10} On June 3, 2004, after filing a waiver of jury trial, a bench trial was held. Prior to commencement of the bench trial, testimony was taken on Conley's motion to suppress his statement. At the conclusion of the hearing on the motion to suppress, the trial court denied Conley's motion, ruling that his statement could be used a trial, and proceeded to hear evidence in a trial to the court.
 {¶ 11} At trial, the State presented the testimony of Officer Norm Ratterman, Officer Kenneth Persinger, Officer Keith Cox, Officer Tom Padavano, Brenda Lute, Officer Ray Myers and Officer Dave Troutman.
 {¶ 12} Officer Cox testified that he was contacted prior to the raid and told to conduct surveillance on the residence at 489 West Church Street. He testified that he watched the house for approximately an hour and a half and, during that time, he observed about five people coming and going from the house. He stated that the people would stay approximately five to ten minutes and then they would leave.
 {¶ 13} Officers Ratterman, Persinger, Padavano and Troutman all testified that they were involved in the December 9, 2003 raid. Additionally, each stated that they were contacted on that night and told by Officer Thomas, who was in charge of the investigation, that they would be conducting a search at 489 West Church Street.
 {¶ 14} Ratterman identified Conley as one of the four people found in the house on that night. Additionally, he testified that, after the officers had entered the house, he saw Conley lay down on the bathroom floor, he saw the money that Conley was lying on and he saw the video camera that was set up in the apartment. Additionally, he testified about the specific evidence that was seized within the house. He also testified that the events in the case, in addition to the items seized in the house, specifically the crack cocaine, razor blades, scales and large quantities of cash in several different places, were indicative of a pattern that he had seen drug dealers use in Marion County. Troutman testified that during the raid he was in charge of collecting all evidence and photographing the apartment. Additionally, Troutman identified the physical evidence that was found at the scene, describing where each piece of evidence was found.
 {¶ 15} Persinger stated that during the raid he dealt with Lute. He testified that she voluntarily handed over the crack cocaine that she had on her person, that he bagged the crack cocaine and that he gave it to Thomas who was collecting all of the evidence. Padavano testified that he arrested Conley after the raid and seized the property that Conley had on him at that time, including over seven hundred dollars in cash found on various parts of his body. Myers, a corrections officer at the Multi-County Jail, testified as to the booking record of Conley.
 {¶ 16} Finally, Lute testified that she was at the house when it was raided. She also testified that she had bought thirty-five dollars worth of crack cocaine from the two black gentlemen at the apartment, which she identified as Alissa Columber's apartment. She stated that she only knew the two men by their street names, "Black" and "Ray-Ray." During her testimony she discussed the drug buy. Specifically, she stated that she had bought a twenty dollar crack rock from one of the two men and a second fifteen dollar crack rock from the other of the two men. Following her buying the crack, she stated that she went into the bedroom with Alissa and began smoking crack. Finally, she testified that she had also smoked crack prior to coming to the apartment on the day of the raid.
 {¶ 17} In addition to the above testimony, the State also introduced and had admitted into evidence several exhibits, including the lab results, which concluded that the white powdery substance found at the apartment was crack cocaine. Finally, the parties stipulated that the Multi-County jail was in Marion County.
 {¶ 18} Upon the presentation of the evidence, the trial court found Conley guilty of possession of cocaine, trafficking in cocaine and tampering with evidence. The trial court found the defendant not guilty of possession of criminal tools. Subsequently, Conley was sentenced on his convictions. It is from this judgment Conley appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BYDENYING HIS MOTION TO SUPPRESS EVIDENCE.
 Assignment of Error No. II THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORTDEFENDANT-APPELLANT'S CONVICTION FOR TAMPERING WITH EVIDENCE.
 Assignment of Error No. III THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORTDEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS.
 Assignment of Error No. IV DEFENDANT-APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS IS CONTRARY TOTHE MANIFEST WEIGHT OF EVIDENCE.
 Assignment of Error No. V THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORTDEFENDANT-APPELLANT'S CONVICTION FOR TRAFFICKING IN DRUGS.
 Assignment of Error No. VI THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BYCONVICTING OF POSSESSION AND TRAFFICKING WHEN THEY ARE ALLIED OFFENSES OFSIMILAR IMPORT.
 {¶ 19} Due to the nature of appellant's claims, we will be addressing the assignments of error out of order.
 Assignments of Error Nos. II, III, IV V {¶ 20} In the second, third, and fifth assignments of error, Conley asserts that the record contains insufficient evidence to support his convictions of possession of cocaine, trafficking in cocaine and tampering with evidence. In the fourth assignment of error, Conley asserts that his conviction for possession of cocaine is against the manifest weight of the evidence. Because these assignments of error are interrelated, we will address them together.
 {¶ 21} In the second, third and fifth assignments of error, Conley claims that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, para. two of the syllabus, superseded by state constitutional amendment on other grounds as recognized in State v.Smith (1997), 80 Ohio St.3d 89.
 {¶ 22} As noted above, Conley was charged with and convicted of possession of cocaine in violation of R.C. 2925.11(A) (C)(4), a felony of the fifth degree, trafficking in cocaine in violation of R.C. 2925.03(A) (C)(4), a felony of the fifth degree, and tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. We will review each conviction separately.
 {¶ 23} In the third assignment of error, Conley asserts that the evidence is insufficient to support his conviction for possession of cocaine pursuant to R.C. 2925.11(A) (C)(4). R.C. 2925.11(A) (C)(4) provides:
(A) No person shall knowingly obtain, possess, or use a controlledsubstance.
* * *
(C) Whoever violates division (A) of this section is guilty ofone of the following:
* * *
(4) If the drug involved in the violation is cocaine or a compound,mixture, preparation, or substance containing cocaine, whoever violatesdivision (A) of this section is guilty of possession of cocaine. * * *
 {¶ 24} On appeal, Conley argues that the record fails to demonstrate that he ever used, possessed or exercised dominion over drugs in Marion County. Specifically, he argues that because no drugs were found on his person, the evidence is insufficient to support his conviction for possession of drugs. Additionally, Conley argues that Lute's testimony is insufficient to support his conviction.
 {¶ 25} As noted above, the State presented evidence at trial that drugs were found at 489 West Church Street, where the raid took place. Additionally, Conley was found in the apartment during the raid. A crack pipe and steel wool were also found at the apartment and presented as evidence at trial. Both are indicative of use of crack cocaine. Finally, Lute testified that she bought crack from each of the two men who were in the apartment.
 {¶ 26} Possession is statutorily defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21
provides the requirements for criminal liability and states: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C.2901.21(D)(1). A person who exercises dominion and control over an object is held to have constructive possession of the object. State v. Bradley
(1971), 26 Ohio App.2d 229, 232. Furthermore, it is well-settled that a conviction may rest solely on the basis of circumstantial evidence.State v. Kamel (1984), 12 Ohio St.3d 306.
 {¶ 27} The evidence at trial went beyond mere proof of Conley's presence in the vicinity of the drugs. The testimony that Conley had sold drugs is sufficient to show that Conley exercised control over the drugs. Regardless of whether Conley was found with drugs on his person, after viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that Conley knowingly possessed crack cocaine beyond a reasonable doubt.
 {¶ 28} Accordingly, the third assignment of error is overruled.
 {¶ 29} In the fourth assignment of error, Conley additionally asserts that his conviction for possession of cocaine is against the manifest weight of the evidence. When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 30} On the issue of manifest weight, Conley again argues that Lute's testimony was vague and unreliable, warranting reversal. As noted above, Lute testified that Conley was one of two black men that she had brought crack cocaine from in the apartment. Conley, however, argues that such evidence is not credible because Lute admitted during cross-examination that she was high when she arrived at the apartment and that she smoked more crack cocaine while she was at the apartment. Thus, according to Conley, the weakness of Lute's testimony rises to the level of requiring reversal as Lute's state of mind weighs heavily against his conviction.
 {¶ 31} While Conley is correct to point out that Lute's testimony as to the incident and the sale was clouded by drug use, all of that information was before the trier of fact. In State v. Awan (1986),22 Ohio St.3d 120, 123, the Ohio Supreme Court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear witnesses and observe their demeanor. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the trier of fact." Id.
 {¶ 32} The credibility of Lute's testimony was an issue for the trier of fact. Obviously, the trial court opted to believe and accept the State's version of the events surrounding the incident. Without more, we will not second guess the conclusion of the trier of fact.
 {¶ 33} Accordingly, the fourth assignment of error is overruled.
 {¶ 34} In the fifth assignment of error, Conley contends that the record is insufficient to support his conviction for trafficking in cocaine pursuant to R.C. 2925.03(A)(1) (C)(4). R.C. 2925.03(A)(1) 
(C)(4) provides:
(A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance; * * *
 (C) Whoever violates division (A) of this section is guilty ofone of the following:
* * *
(4) If the drug involved in the violation is cocaine or a compound,mixture, preparation, or substance containing cocaine, whoever violatesdivision (A) of this section is guilty of trafficking in cocaine. * * *
 {¶ 35} On appeal, Conley specifically argues that because he was never identified at trial as a person who sold drugs the evidence is insufficient to support his conviction. Again, we note that at trial the State presented evidence that crack cocaine, a couple sets of scales and a razor blade, which are indicative of trafficking in crack cocaine, were all found in the house. The State also presented evidence of the television set found at the apartment that was connected to a camera located outside on the front porch of the house. The television showed a view of the front porch when the police came into the house. Evidence that cash totaling over eleven hundred dollars was found in the living room, in the bathroom and the bedroom, as well as over seven hundred dollars in cash being found in different places on Conley's person, was also presented. One officer testified that prior to the raid he maintained surveillance on the apartment and that while he could not "tell if they were going in [the apartment] or not, * * * it looked like [several people] were going in" for short amounts of time. (Trial Tr. 59.) Additionally, an officer testified that all of the circumstances present at the time of the raid were indicative of dealings in drugs. Finally, there was the testimony of Lute that Conley was one of the two black men in the apartment who had sold her crack cocaine.
 {¶ 36} While Lute was not able to specifically identify Conley by his proper name and was only able to identify him from his street name, she did testify that he was one of two black males from whom she bought crack cocaine while in the apartment on the night of the raid. There were only two black males in the apartment. Conley was found in the apartment at the time of the raid and was later arrested and booked by the police. After viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Conley knowingly sold crack cocaine to Lute. Regardless of how Lute identified Conley at trial, he was found in the apartment at the time of the raid and identified as one of the two men who had sold her drugs in the apartment just prior to the raid. Thus, there is sufficient evidence to support Conley's conviction for trafficking in cocaine.
 {¶ 37} Accordingly, the fifth assignment of error is overruled.
 {¶ 38} In the second assignment of error, Conley asserts that the record contains insufficient evidence to support his conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1). Conley was indicted for tampering with evidence following his failure to provide Detective Thomas with a urine sample, upon being served with a search warrant for such a sample.
 {¶ 39} R.C. 2921.12(A)(1) provides:
(A) No person, knowing that an official proceeding or investigation isin progress, or is about to be or likely to be instituted, shall do anyof the following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing,with purpose to impair its value or availability as evidence in suchproceeding or investigation * * *
 {¶ 40} On appeal, Conley contends that his being charged with, prosecuted for and convicted of tampering with evidence is contrary to law, because there is no evidence that he altered, destroyed or concealed any evidence. According to Conley, because the only evidence presented was Thomas' deposition testimony that he had declined to give a urine sample, the evidence is insufficient to support his conviction. Conley's argument is based upon a two presumptions: (1) that a search warrant authorizes the police to obtain evidence that has not been volunteered and to do so by force if necessary; and, (2) that the police technically knew where the urine was and, as such, it was not concealed and the police could have obtained the sample by other means. Thus, according to Conley, while he may have failed to obey the command of a police officer, he did not tamper with evidence.
 {¶ 41} Upon review, we find that the trial record contains no evidence to support Conley's conviction for tampering with evidence.
 {¶ 42} First, we consider the deposition testimony of Officer Thomas. Prior to trial, Thomas was deposed twice. Thomas was first deposed on May 25, 2004 (hereinafter referred to as "Deposition 1"). Thomas was again deposed on May 27, 2004 (hereinafter referred to as "Deposition 2"). At the beginning of Deposition 1, the following stipulation was included:
It is stipulated by and between counsel for the respective parties thatthe deposition of Casey Thomas, a witness herein, called by thePlaintiff, the State of Ohio, for direct examination pursuant to theRules of Civil Procedure, may be taken at this time by Karla C. Layne,Notary Public in and for the State of Ohio, by agreement of counsel andwithout Notice or other legal formality; * * *.
 {¶ 43} During Deposition 1, Thomas stated that he was unable to testify at the trial, which had been scheduled for the next week, because he was going to be out of the State of Ohio. Further, in Deposition 1, Thomas stated that he was in charge of the investigation and the raid that took place at 489 West Church Street. According to Thomas, after talking to a confidential informant, he testified for and received a search warrant to enter the apartment. He stated that during the raid the police found crack cocaine and that Conley, Mayes, Lute and Columber were arrested. Thomas identified Conley as one of the four persons arrested at the apartment on the night of the raid.
 {¶ 44} Thomas went on in Deposition 1 to discuss the search warrant for Conley's urine. Thomas identified both the search warrant and the notice, stating that he had provided the probable cause testimony for the search warrants for the urine of both Conley and co-defendant, Mayes. He then went on to explain that it is necessary to obtain the urine within seventy-two hours of the arrest, because after seventy-two hours the cocaine is no longer present in one's system. Thomas then stated that he served Conley with the search warrant for his urine on December 10, 2003. He stated that at that time he gave Conley a copy of the search warrant as well as the notice, which stated that Conley could be charged for tampering if he did not submit his sample. He went on to state that Conley did not provide a sample and that Conley signed the bottom of the notice. When asked if Conley specifically refused to give a sample, Thomas stated that he did not specifically refuse, but that he simply did not provide the sample.
 {¶ 45} Deposition 2 included a similar stipulation to that made in Deposition 1. The crux of Thomas' statements in Deposition 2 dealt with an audio cassette tape that Thomas had found after Deposition 1 was taken. While Thomas stated during Deposition 1 that he did not believe that there were any tapes made in conjunction with the investigation of this case, he located a tape that had been made when he returned to Conley's cell after Conley had declined to give his urine sample. Additionally, Thomas stated the following during Deposition 2:
Because I gave him — because when I gave him the urine search warrant,I said, this is a court order from the judge indicating we need a urinesample. And that's when he said I'm not going to give my urine.
 {¶ 46} At trial, the State presented no evidence on the issue of tampering. Rather, it appears from the trial record that the State relied solely upon Thomas' depositions to prove the charge.[1] Upon close review of the record, we find that neither Deposition 1 nor Deposition 2 were properly admitted into evidence at trial.[2] And while it is apparent from the trial transcript that the trial court was aware of and had read both Deposition 1 and Deposition 2,[3] it is axiomatic that a finder of fact is only to consider evidence that is properly before it. Thus, without having either deposition properly admitted, we must determine whether they could be used by the trial court pursuant to the Rules of Civil and Criminal Procedure.
 {¶ 47} Turning to the Rules of Civil Procedure, we cannot find any rule that would allow for the use of the depositions as direct evidence unless they had been properly admitted into evidence. First, while we note that Civ.R. 32 does allow for depositions to be used in court proceedings in some situations, we cannot find that the facts herein apply under that rule. Pursuant to Civ.R. 32 depositions, properly filed in advance of trial, might have been used, "so far as admissible under the rules of evidence," for impeachment purposes or by an adverse party. Additionally, section (A)(3) states depositions "may be used * * * for any purpose if the court finds:"
(a) that the witness is dead; or (b) that the witness is beyond thesubpoena power of the court in which the action is pending or residesoutside of the county in which the action is pending unless it appearsthat the absence of the witness was procured by the party offering thedeposition; or (c) that the witness is unable to attend or testifybecause of age, sickness, infirmity, or imprisonment; or (d) that theparty offering the deposition has been unable to procure the attendance ofthe witness by subpoena; or (e) that the witness is an attendingphysician or medical expert, although residing within the county in whichthe action is heard; or (f) that the oral examination of a witness is notrequired; or (g) upon application and notice, that such exceptionalcircumstances exist as to make it desirable, in the interest of justiceand with due regard to the importance of presenting the testimony ofwitnesses orally in open court, to allow the deposition to be used.
 {¶ 48} Upon review of the record, we cannot find that any of the above circumstances apply in the case sub judice. Additionally, we note that the trial court did not make any such finding.
 {¶ 49} Next, we note that Civ.R. 29 provides:
Unless the court orders otherwise, the parties may by writtenstipulation (1) provide that depositions may be taken before any person,at any time or place, upon any notice, and in any manner and when sotaken may be used like other depositions; and (2) modify the proceduresprovided by these rules for other methods of discovery.
While Civ.R. 29 does allow for parties to modify the rules, it only allows for modification of discovery rules. Thus, regardless of the parties' stipulations, we cannot find that the trial court was able to consider the depositions unless they were properly admitted into evidence.
 {¶ 50} Turning to the Criminal Rules of Procedure, Crim.R. 15 provides the procedure to be used when depositions are necessary in criminal cases. Crim.R. 15(F) states that "[a]t the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: that the witness is dead; or, that the witness is out of the state * * *."
 {¶ 51} However, the trial court may only permit a deposition to be taken in a criminal case if the court finds that:
[I]t appears probable that a prospective witness will be unable toattend or will be prevented from attending a trial or hearing, and if itfurther appears that his testimony is material and that it is necessaryto take his deposition in order to prevent a failure of justice * * *.
Crim.R. 15(A).
 {¶ 52} We do not find that a temporary absence from the state renders a witness "unable" or "prevented" from attending. We would, therefore, caution the trial court to restrict permitting testimony by depositions in criminal cases to those situations where the material witness is actually prevented from attending the trial and where a prolonged absence from the state is unavoidable. A short continuance of the trial date is preferable to the use of depositions and less likely to give rise to a constitutional violation.
 {¶ 53} While the dissent would find that the above depositions were nonetheless admitted into evidence, we cannot agree that such lax methods should be allowed in a criminal trial. Additionally, we note that the State's exhibit list did not contain either Deposition 1 or Deposition 2.
 {¶ 54} Furthermore, even if we were to allow the admission of the depositions in this case, we have previously held that a defendant's mere refusal to provide a sample does not constitute an overt act of `concealment' as the term is employed in the statute. State v. Freeman,
3d Dist. No. 9-04-65, 2009-Ohio-5892, ¶ 24. Additionally, as inFreeman, there is no evidence that Conley altered, destroyed or removed the sample which he declined to provide. Id. at ¶ 24. Accordingly, even if we were to admit the above depositions, the evidence would nonetheless be insufficient to support a conviction for tampering with evidence.
 {¶ 55} Having found that both Deposition 1 and Deposition 2 were not properly before the court, we cannot find that there was any evidence provided at trial on the charge of tampering. Therefore, the second assignment of error is sustained.
 Assignment of Error No. I {¶ 56} In the first assignment of error, Conley asserts that the trial court erred by denying his motion to suppress evidence and that the trial court's denial of that motion was prejudicial. We disagree.
 {¶ 57} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. A trial court's decision as to a motion to suppress will not be reversed if it is supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. When reviewing a trial court's decision on a motion to suppress, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses[,]" and then independently review whether the trial court applied the correct legal standard. State v.Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 58} In the case sub judice, Conley argues that the statement he made to Thomas, when he was served with the search warrant for his urine, was not voluntary and should have been suppressed. Thus, the issue for determination is whether Conley's statement to Thomas was voluntary.
 {¶ 59} A suspect's waiver of his right not to incriminate himself must be made voluntarily, knowingly, and intelligently. Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602. In order to be voluntary, a statement must be the product of a rational intellect and free will. In order to determine whether a statement was voluntarily given, the court must consider the totality of the circumstances surrounding the confession's inducement. Mincey v. Arizona (1978), 437 U.S. 385, 98 S.Ct. 2408; Statev. Barker (1978), 53 Ohio St.2d 135, para. Two of the syllabus of the court; State v. Edwards (1976), 49 Ohio St.2d 31, 40-41, vacated on other grounds, (1978), 438 U.S. 911, 98 S.Ct. 3147. The totality of the circumstances includes, but is not limited to, the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of the interrogations; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Edwards, Ohio St.2d at 40-41.
 {¶ 60} The hearing on the motion to suppress was held immediately prior to trial. At the hearing on the motion to suppress, the State relied solely on the depositions of Thomas. Again, those depositions were never properly entered into evidence during the hearing on the motion to suppress. Accordingly, we must first determine whether it was proper for the trial court to consider them in making its determination on the suppression of Conley's statement.
 {¶ 61} Crim. R. 12(F) provides that "[t]he court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Prior to the hearing on the motion to suppress, the State filed a response to Conley's motion to suppress which included Deposition 2. Again, the better practice would have been to either have Thomas testify in person at the hearing on the motion to suppress or, in the alternative, to have the depositions properly admitted into evidence at the hearing on the motion to suppress. However, based upon the State's attachment of Deposition 2 to its response to Conley's motion to suppress, as well as defense counsel's failure to object to the trial court's reliance upon that deposition, we find that the State's attachment of Deposition 2 is sufficient as a "proffer of testimony" under Crim. R. 12(F). Accordingly, we will consider Deposition 2 in our review.
 {¶ 62} Upon review of record, we concur with the trial court that, considering the totality of the circumstances, Conley's statements were voluntary. During Deposition 2, Thomas stated the following:
State: When you initially served the Defendant with his searchwarrant, did you ask him any questions?
 Thomas: No.
 State: And so how did those statements come about that the Defendantsaid?
 Thomas: Because I gave him — because when I gave him the urine searchwarrant, I said, this is a court order from the judge indicating we needa urine sample. And that's when he said, I'm not going to give my urine,but I will tell the judge that I smoked crack. There's no — there were noquestions asked to the Defendant.
 {¶ 63} Conley argues that Thomas' being armed with the search warrant and notice were the functional equivalent of expressed questioning, pursuant to State v. Tucker (1998), 81 Ohio St.3d 431, 435-436, and RhodeIsland v. Innis (1980), 446 U.S. 291, 300-301, 100 S.Ct. 1682. However, even if Conley's statement was made in response to being served with a search warrant, service of a warrant alone is not tantamount to questioning. While it is clear that Conley was in custody at the time he was served with the search warrant, we find that there is sufficient competent, credible evidence that Conley was not questioned. Thus, taking that as a finding of fact and applying it, we find that the trial court properly held that Conley's statements were made voluntarily.
 {¶ 64} While Conley's statements could have been properly used at trial, based upon our above finding that neither Deposition 1 nor Deposition 2 were admitted at trial, we find that Conley's statements were never properly placed in the trial record for the trial court's review. However, based upon the trial court's review of the depositions as well as the hearing on the motion to suppress, it is obvious that the trial court knew about and considered the statement in its review of Conley's case. Nevertheless, we find that the trial court's knowledge of Conley's statements was harmless.
 {¶ 65} In determining whether or not an error in the admission of evidence is harmless, this Court must find that there is no reasonable possibility that the evidence may have contributed to Conley's conviction. See State v. Bayless (1976), 48 Ohio St.2d 73, para. seven of the syllabus of the court, vacated on other grounds (1978), 438 U.S. 911. Upon review of the trial record, we find that Conley's statement does not rise to such a level. On the charges of possession of and trafficking in cocaine, the evidence presented against Conley was sufficient to support his convictions. On the charge of trafficking in cocaine, the State presented the testimony of Lute, who stated that Conley was one of two black men from whom she had bought crack cocaine. On the charge of possession cocaine, the State's evidence showed that Conley possessed or exercised control of cocaine at the time of the sale. Accordingly, we find that there was no reasonable possibility that Conley's statement, that he had smoked crack cocaine, may have contributed to his convictions.
 {¶ 66} Accordingly, the first assignment of error is overruled.
 Assignment of Error No. VI {¶ 67} In the sixth assignment of error, Conley asserts that the trial court erred in convicting him of both possession of and trafficking in drugs because they are allied offenses of similar import.
 {¶ 68} R.C. 2941.25 provides:
(A) Where the same conduct by defendant can be construed to constitutetwo or more allied offenses of similar import, the indictment orinformation may contain counts for all such offenses, but the defendantmay be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses ofdissimilar import, or where his conduct results in two or more offensesof the same or similar kind committed separately or with a separateanimus as to each, the indictment or information may contain counts forall such offenses, and the defendant may be convicted of all of them.
 {¶ 69} In State v. Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553, the Ohio Supreme Court recently held that "R.C. 2941.25(A) applies when the state obtains multiple convictions arising out of the same conduct of a defendant that can be construed to constitute two or more allied offenses of similar import." Id. at ¶ 30. However, where the State has not relied upon the same conduct of the defendant to support multiple convictions, the defendant may be convicted of both crimes and be sentenced on each. Id. Accordingly, we must first determine whether the State proved two distinct acts of possession and trafficking or whether the State's evidence is predicated upon the single sale as Conley argues.
 {¶ 70} Applying the Cooper test, it does appear that the possession and trafficking charges were both based upon the sole sale described by Lute. Thus, we must next determine whether the offenses of possession and trafficking are allied offenses of similar import.
 {¶ 71} In State v. Rance (1999), 85 Ohio St.3d 632, 638, the Supreme Court of Ohio clarified the R.C. 2941.25(A) analysis and determined that the statutorily defined elements of offenses are compared in the abstract to determine if they correspond to such a degree that the commission of one crime will result in the commission of the other crime.
 {¶ 72} Again, R.C. 2925.11(A) (C)(4) provides that:
(A) No person shall knowingly obtain, possess, or use a controlledsubstance.
* * *
(C) Whoever violates division (A) of this section is guilty ofone of the following:
* * *
(4) If the drug involved in the violation is cocaine or a compound,mixture, preparation, or substance containing cocaine, whoever violatesdivision (A) of this section is guilty of possession of cocaine. * * *
 {¶ 73} R.C. 2925.03(A)(1) (C)(4) defines trafficking in drugs. R.C. 2925.03(A)(1) (C)(4) provides:
(A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance;
* * *
(C) Whoever violates division (A) of this section is guilty ofone of the following:
* * *
(4) If the drug involved in the violation is cocaine or a compound,mixture, preparation, or substance containing cocaine, whoever violatesdivision (A) of this section is guilty of trafficking in cocaine. * * *
 {¶ 74} After comparing the elements of both statutes, we conclude that each offense requires proof of an additional fact that the other does not. The possession charge requires proof that a person obtained, possessed, or used crack cocaine, while the trafficking charge requires proof that a person sold or offered to sell crack cocaine. Accordingly, it is possible to possess crack cocaine without offering it for sale, and it is possible to sell or offer to sell crack cocaine without having it in one's possession or control. See State v. Fair, 8th Dist. No. 82278, 2004-Ohio-2971, State v. Alvarez, 12th Dist. No. CA2003-03-067, 2004-Ohio-2483. As such, possession of and trafficking in cocaine are not allied offenses of similar import, because the elements do not correspond to such a degree that the commission of one will result in the commission of the other.
 {¶ 75} Accordingly, the sixth assignment of error is overruled.
 {¶ 76} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as to the offense of tampering with evidence and remand the matter for further proceedings consistent with this opinion. Having found no error prejudicial to the appellant as to offenses of possession of and trafficking in cocaine, the judgment is affirmed in all other respects.
Judgment affirmed in part, reversed in part and cause remanded.
 Cupp, P.J., concurs in part; concurs in judgment only in part.
[1] While trial testimony through deposition is not prohibited, we are shocked that the State chose to introduce the testimony of the lead officer in a drug case in this manner. Because the issue was not raised on appeal and Conley's trial counsel stipulated to taking the deposition testimony, we will not address the issue in the body of our opinion. Nevertheless, we are compelled to comment on the use of depositions in criminal trials generally.
Section 10, Article I of the Ohio Constitution provides in pertinent part as follows:
In any trial, in any court, the party accused shall be allowed to * * *meet the witnesses face to face * * *; but provision may be made by lawfor the taking of the deposition by the accused or by the state, to beused for or against the accused, of any witness whose attendance can notbe had at the trial * * *.
Furthermore, this Court has previously stated in State v. Gettys
(1976), 49 Ohio App. 2d 241, 248, that:
The constitutional purpose was to limit the use of such substitutemodes of presenting evidence in criminal trials to those strictly limitedsituations of witnesses "whose attendance cannot be had at a trial." Inall other cases, it is contemplated that the witnesses will be physicallypresent and testify * * * in the course of the trial proper.
Accordingly, the State should not be so quick to attempt to replace live witness testimony with deposition testimony in a criminal case. A defendant must be afforded a proper trial where witnesses are to be presented and a defendant must be afforded the right to confrontation, including the ability to challenge such witnesses. We remind the State that judicial economy should never be construed in such a way as to make the presentation of live witness testimony a luxury, rather than the norm.
[2] Proper judicial procedure requires that exhibits first be specifically identified for the record, and second, offered as evidence. Identification alone does not suffice to enter the exhibit into evidence. The court must specifically rule on its admission.
[3] The following dialogue took place on the record:
State: Okay. At this point in time we would — let me put it this way.The Court read Casey's deposition?
 Court: Um-hum.
 State: I've prepared to have an individual sit here and go through theusual procedure that we do for depositions. Now, we could do that —
 Defense counsel: That won't be necessary. I believe the Judge can readand write, and I trust him to be able to read the depositions.
 State: I think the Court's already indicated he's read the deposition?
* * *
Court: The machinations we normally go through with the jury and havingsomeone take the place of witnesses are not necessary for me.
While we note that the trial court as well as defense counsel may have contributed to the State's failure to properly place the depositions on the trial record, the State was ultimately responsible for making sure that the depositions were properly admitted into evidence. Having failed to properly offer either Deposition 1 or Deposition 2, and without admission of the depositions by the trial court, we will not consider them.