OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this court. Appellant, Albert McLeod, appeals the decision of the Jefferson County Court of Common Pleas finding him guilty of one count of felonious assault in violation of R.C. 2903.11(A)(2) which was merged with a second count of felonious assault in violation of R.C.2903.11(A)(1). McLeod was also found guilty of carrying a weapon while under disability in violation of R.C. 2923.14 and of a gun specification for using a weapon during the commission of felonious assault. McLeod further appeals the trial court's imposition of consecutive sentences.
 {¶ 2} Although McLeod's six assignments of error regarding his conviction are meritless, he has raised a successful challenge to the imposition of consecutive sentences as the trial court failed to make all the necessary findings required by law. Accordingly, McLeod's conviction is affirmed, his sentence is vacated and this cause is remanded to the trial court for resentencing.
 Facts {¶ 3} On January 3, 2004, Albert McLeod approached a vehicle parked outside of the Safari Lounge, opened fire on the car, and shot Terrell Sayles in the leg. A trial was conducted on February 15, 2005 and the jury returned guilty verdicts on all counts. McLeod was then sentenced by the trial court to serve seven years for felonious assault, with a mandatory consecutive three years for the gun specification, to be served consecutively to a six month sentence for carrying a weapon under a disability.
 Disqualification of Trial Court {¶ 4} McLeod presents this court with seven assignments of error which will be addressed out of order for the sake of clarity. As the second of seven assignments of error, McLeod states:
 {¶ 5} "The trial court erred to the prejudice of the Defendant-Appellant when it failed to disqualify itself and overruled his motion for a mistrial after the court's relative, who was employed as a county prosecutor, had been present during the voir dire and accompanied the prosecutor on a jury view."
 {¶ 6} McLeod argues that the trial court was biased against him based on the presence of the trial court's nephew, a new assistant prosecutor who had come to observe the proceedings. However, McLeod was in no way prejudiced by the mere presence of the judge's nephew as he did not actively participate in the proceedings and was merely watching to educate himself.
 {¶ 7} Furthermore, if McLeod believed that the trial judge was biased or prejudiced toward him at any stage of the proceedings in the trial court, his remedy was the filing of an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court. R.C. 2701.03. See, also, Berdyck v. Shinde (1998), 128 Ohio App.3d 68,81; Jones v. Billingham (1995), 105 Ohio App.3d 8, 11. Only the Chief Justice of the Ohio Supreme Court or his designee has the authority to pass upon the disqualification of a common pleas court judge. Beer v.Griffith (1978), 54 Ohio St.2d 440, 441; State v. Dougherty (1994),99 Ohio App.3d 265, 268-269. Thus, a court of appeals is without authority to render a decision as to disqualification or to void a trial court's judgment on the basis of alleged bias. Beer, at 441-442;Dougherty, at 269. Accordingly, this court may not reach the merits of this assignment of error.
 Manifest Weight {¶ 8} McLeod's first assignment of error claims:
 {¶ 9} "The jury erred to the prejudice of the Defendant-Appellant when it convicted him of two (2) counts of felonious assault and weapon under disability and the convictions are against the manifest weight of the evidence."
 {¶ 10} The conviction which is mainly brought into question with this assignment of error is McLeod's convictions of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2). Those sections provide respectively that no person shall knowingly cause serious physical harm to another or cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance.
 {¶ 11} When determining whether a verdict is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." Id.
 {¶ 12} The test a reviewing court follows is that it sits as a "thirteenth juror" and determines whether, considering all the evidence, the state met its burden of persuasion and the conclusion reached by the trier of facts is supported by the inclination of the greater amount of the evidence. State v. Fullerman, 7th Dist. No. 99CA314, 2001-Ohio-3969, citing Thompkins, 78 Ohio St.3d at 387. When making a decision on manifest weight of the evidence, the appellate court is not required to view the evidence in a light most favorable to the prosecution, but may consider all of the evidence produced at trial. Id. at 390. This discretion to grant a new trial, however, should only be exercised in an exceptional case in which the evidence weighs heavily against the conviction. Id. at 387. In order to reverse a conviction from a trial by jury, a unanimous concurrence of all three appellate judges is required. Id. at 389.
 {¶ 13} McLeod essentially argues that his conviction was against the manifest weight of the evidence because the testimony of the state's witnesses was somewhat inconsistent and because the only two witnesses whose testimony was uncontradicted did not see him in possession of a gun.
 {¶ 14} In response, the State argues that the evidence of McLeod's guilt was overwhelming. The state explains that there were three eyewitnesses that saw McLeod shoot the victim and two additional witnesses who placed McLeod directly in front of the car at which he was shooting but who ducked when they both saw and heard shots coming from the same location.
 {¶ 15} More specifically at trial, the victim Terrell Sayles took the stand and testified that he drove to the Safari Lounge on the night of the incident. He parked his car and walked across the street where he saw two females that he knew sitting in a truck. He jumped into the truck which was parked in front of the bar. He saw his cousin, Todd Dawson/Jackson arguing with a female in front of the bar. He got out of the truck and broke up the fight. He headed back to the truck and as he was getting in the vehicle he heard gunshots. He was hit by one of the bullets.
 {¶ 16} He testified that he heard the girls screaming "Albert." He then got out of the other side of the truck and took off running up between the gangway. The girls drove up around the corner and picked him up in the alley and then drove him to the hospital. They treated him briefly at Trinity Hospital and then was taken by ambulance to Pittsburgh. They were unable to remove the bullet from his leg.
 {¶ 17} Next, John Butler, the owner of the Safari Lounge took the stand. He testified that he kicked Todd Jackson out of the bar for underage drinking and that his daughter Leigheal was outside arguing with him. While he was outside with his daughter he saw McLeod running out of the alley way shooting a gun. He said that McLeod started following the truck and shooting the gun at the truck until the gun was emptied. He further testified that he was positive it was McLeod as he has known him for ten years and he did not see anyone else with a gun that night.
 {¶ 18} Next, Jessica Suriano testified that she was driving the Blazer that was shot at that night. Natasha Toney was in the car with her. Terrell hopped into the seat behind her. She testified that she saw Todd and Leigheal arguing in front of the bar. Terrell got out of the car and pulled Todd away from the argument. Todd and Terrell got back into the car at which time Jessica saw McLeod standing at the front driver side of her car. She heard gunshots so she leaned down. Jessica admits though that she didn't actually see anyone fire shots. Terrell and Tony exited from the other side of the vehicle. She then started the car up and pulled away. She turned around the corner and headed down the alley where she picked up Terrell. She found out that he had been shot so she drove him to the hospital. Later, the police impounded her car and found bullets and blood in the door and across the back seat.
 {¶ 19} Next, Natasha Toney took the stand. She testified that she was riding in the passenger seat of Jessica's Blazer that evening. She gave testimony nearly identical to Jessica's.
 {¶ 20} Rolland Owens then testified that he lived with his grandparents across and down the street from the Safari Lounge. The night of the shooting he was in bed but got out of bed when he heard an argument. He saw two people arguing in front of the bar. He then saw Terrell go and take Todd away from the argument. However, he did not see Terrell get back into the car. He saw McLeod start walking towards the car and begin shooting. He could see the flashes coming from the gun as McLeod fired. Rolland then testified that he called his uncle, William Wade to tell him that Terrell had just been shot at by McLeod. The next morning Rolland went outside and found two spent shell casings. He gave them to his grandfather.
 {¶ 21} Leigheal Butler testified that she was John Butler's daughter and that she helped him out at the Safari Lounge. However, she doesn't work there anymore because somebody burned it down. On the night of the shooting, Leigheal testified that she asked Todd Jackson to leave the bar because he was underage. She sees McLeod and says "why don't you take your stepson home," in reference to Todd. She explained that McLeod had been dating Todd's mother. She then saw McLeod chase Terrell across the street, and after Terrell got in the car, McLeod began shooting.
 {¶ 22} The defense did not put on any witnesses to refute any of this testimony. Accordingly, it would be difficult to say that the jury lost its way in coming to its conclusion in light of the fact that there were multiple seemingly credible eyewitnesses to this crime. Moreover, it was reasonable for the jury to conclude that shooting someone in the leg would at least constitute an attempt at causing serious physical harm. This assignment of error is meritless.
 Other Acts Testimony {¶ 23} McLeod's sixth assignment of error argues:
 {¶ 24} "The trial court erred to the prejudice of the Defendant-Appellant when it allowed testimony of other acts with which the Defendant-Appellant was not charged, thus denying him due process of law."
 {¶ 25} McLeod claims he was prejudiced by the admission of irrelevant and prejudicial testimony regarding prior actions not contained in the indictment. More specifically, McLeod objects to the following testimony which was admitted by the trial court.
 {¶ 26} At trial, Leigheal Butler testified that she witnessed McLeod threatening to kill her dad for being a snitch. Rolland Owens testified that he did not come to court voluntarily because his mom was afraid that something might happen to him or his grandparents' house. Terrell Sayles testified that he and McLeod used to be friends but that they got into a fight when McLeod accused him of stealing money from him. The verbal dispute leaded to two physical altercations on the same night resulting in Terrell having a chipped tooth. Terrell further testified that he was friends with Jessica Suriano, a girl who had dated McLeod. Jessica told Terrell that McLeod thought that she was cheating on him with Terrell.
 {¶ 27} Likewise, John Butler testified that he previously had to kick McLeod out of his bar after he attacked Terrell Sayles. He stated that he didn't tell the police everything about that incident because he was threatened by McLeod's family. In the present case, he likewise did not want to testify before the Grand Jury because he was threatened by both McLeod and McLeod's father for being a snitch. He further claimed that he did not come to testify voluntarily because McLeod was bragging about burning his bar down. Allegedly, McLeod also threatened to burn down Butler's home. He reported these threats to the Steubenville police.
 {¶ 28} Evidence of prior bad acts is governed by Evid.R. 404(B) which states:
 {¶ 29} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also,State v. Lowe (1994), 69 Ohio St.3d 527, 530, citing State v. Broom
(1988), 40 Ohio St.3d 277, 282-83. Evidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. State v. Wilkinson (1980), 64 Ohio St.2d 308,415 N.E.2d 261. If the other admissible evidence, standing alone, constitutes overwhelming proof of guilt, the error is harmless. State v. Zuern
(1987), 32 Ohio St.3d 56, 60-61; State v. Williams (1983),6 Ohio St.3d 281, paragraph six of the syllabus.
 {¶ 30} The testimony regarding the fighting and accusations of cheating would tend to prove intent or motive for shooting Terrell. Therefore, this testimony clearly would be admissible. With regard to the testimony regarding the threats, intimidation, and alleged arson, the Ohio Supreme Court has said that evidence of threats or intimidation of witnesses reflects a consciousness of guilt similar to evidence of flight to avoid prosecution, or efforts made to cover up a crime or intimidate witnesses and is admissible as admission by conduct.State v. Richey (1992), 64 Ohio St.3d 353, 357. See also State v.Group, 98 Ohio St.3d 248, 2002-Ohio-7247. Hence, intimidation of a witness is not "wholly independent" of the charged offenses. State v.Soke (1995) 105 Ohio App.3d 226, 250. See also State v. Leonard (May 21, 1993), 4th Dist. No. CA92-12, State v. Reese (Jan. 7, 1988), 8th Dist. Nos. 53115 and 53116, at 22-23. Accordingly, this type of evidence would be admissible at trial. Therefore, this assignment of error is also meritless.
 Timing of Witness Disclosure {¶ 31} McLeod's third assignment of error states:
 {¶ 32} "The trial court erred to the prejudice of the Defendant-Appellant when it failed to exclude the testimony of a witness who was placed on the witness list only three days prior to trial or in the alternative grant him a continuance to allow his counsel time to prepare for this new witness."
 {¶ 33} McLeod challenges the trial court's decision to allow testimony from Rolland Owens despite the fact his name was not put on a witness list until four days prior to trial.
 {¶ 34} Crim.R. 16(B)(1)(e) requires the prosecutor to "furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial." The duty to disclose information is a continuing one, so that a party must notify the other party as new discoverable information is gained. See Crim.R. 16(D).
 {¶ 35} If the state fails to promptly provide the identity of a witness as required by Crim.R. 16, the trial court does not abuse its discretion by permitting the witness to testify if it can be shown that: (1) the state's failure to provide discovery was not willful, (2) foreknowledge of the statement would not have benefited the defendant in preparation of his defense, and (3) the defendant was not prejudiced by the admission of the evidence. State v. Czajka (1995),101 Ohio App.3d 564, 572. Where the failure to disclose a witness is not willful, the trial court has numerous means to cure such a deficiency in discovery. See State v. Wamsley (1991), 71 Ohio App.3d 607, 610. One remedy available to the trial court is giving defense counsel the opportunity to interview the witness prior to the witness testifying. State v.Heinish (1990), 50 Ohio St.3d 231, 236.
 {¶ 36} Here, it seems clear that there was no willful withholding of discovery as the identity of the witness, Rolland Owens, and his potential testimony was handed over to the defense in the form of a police report provided to the defense on August 27, 2004, nearly six months before trial. The police report made by Det. Stasiulewicz stated:
 {¶ 37} "Today Alfie Wade Sr. came to the office with physical two spent 380 casings found by his grandson Roland Owens who was staying with his grandmother Ms. Wilson on North 8th Street the night of the shooting. Mr. Wade told me that Roland saw the shooting, and the argument. The next day Roland was looking around for shell casings and located two spent shells down on the street. These items were tagged and placed in the evidence room."
 {¶ 38} Although Roland Owens was not put on an official witness list until four days before trial, the defense cannot claim that they were completely surprised by this witness in light of the police report. As the State points out in its brief, there was nothing preventing defense counsel from either contacting this witness or questioning the prosecution about his grandfather's statement made to the police.
 {¶ 39} Even if this is viewed as a deficiency in discovery, the trial court attempted to cure it by giving defense counsel an opportunity to interview Rolland and prepare for as long as was necessary prior to him testifying. Notably, defense counsel took advantage of this opportunity and returned to the courtroom when he was ready to proceed.
 {¶ 40} Because it appears that the State did not intend to willfully surprise McLeod since defense counsel was in fact aware of the existence of this eyewitness and his potential testimony, and because the trial court attempted to cure any prejudice caused by this witness testifying, the trial court did not abuse its discretion by allowing Roland to testify.
 Impeachment of Witness {¶ 41} As his fourth assignment of error, McLeod argues:
 {¶ 42} "The trial court erred to the prejudice of the Defendant-Appellant when it did not allow counsel to properly impeach a witness."
 {¶ 43} With this assignment of error, McLeod argues that he was not allowed to impeach Butler based on his "extensive arrest record." McLeod explains that Butler had previously been arrested for carrying a concealed weapon. McLeod claims that he should have been able to impeach Butler with this information when Butler testified that he didn't carry a gun on his person or keep one at his bar. McLeod argues that this would have been relevant information at trial as it would have placed a second gun at the scene of the crime.
 {¶ 44} Under Evid.R. 609, a witness' credibility may only be impeached with his or her prior felony convictions or convictions of crimes involving dishonesty. Under Evid.R. 608, a witness' credibility may be impeached on cross-examination with specific instances of the witness' conduct if, in the discretion of the trial court, the conduct is clearly probative of the witness' untruthfulness. "Inquiry with respect to arrests, accusations, or indictments which did not result in a conviction is improper and constitutes prejudicial error." State v.Tharp (1976), 49 Ohio App.2d 291, 361 N.E.2d 469.
 {¶ 45} Here, Butler's prior arrest did not lead to a conviction, nor was it a crime involving dishonesty. Accordingly, Evid.R. 608 and 609 barred McLeod from eliciting testimony on the prior arrest. SeeState v. Westbrook (Dec. 4, 2001), 10th Dist. No. 00AP-1383; State v.Rodriquez (1986) 31 Ohio App.3d 174. Thus, McLeod's assignment of error is meritless as the trial court properly precluded McLeod from using the prior arrest to impeach Butler's credibility.
 New Trial {¶ 46} McLeod's fifth assignment of error claims:
 {¶ 47} "The trial court erred to the prejudice of the Defendant-Appellant when it failed to grant his motion for new trial."
 {¶ 48} Pursuant to Crim. R. 33, a new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 49} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 {¶ 50} * * *
 {¶ 51} (5) Error of law occurring at the trial;* * * "
 {¶ 52} The standard applied when reviewing a trial court's determination on a motion for new trial is that of abuse of discretion.State v. Schiebel (1990), 55 Ohio St.3d 71, at paragraph one of the syllabus. An abuse of discretion implies that the court's ruling was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 53} McLeod argues that the trial court should have granted him a new trial based on all of the errors that permeated the original trial. However, McLeod does nothing more than recite arguments made earlier in his brief regarding the trial court's nephew, the impeachment of Butler, and the testimony of Rolland Owens. If this court finds that those assignments of error are meritless, it would logically follow that the trial court did not abuse its discretion for failing to grant a new trial based on those same arguments.
 Foster Sentencing Issue {¶ 54} McLeod's seventh and final assignment of error maintains:
 {¶ 55} "The trial court erred to the prejudice of the Defendant-Appellant when it sentenced Defendant-Appellant to a definite sentence of seven (7) years imprisonment on one count of felonious assault, seven (7) years imprisonment on an additional count of felonious assault against the same victim, which were allied offenses of similar import, and a mandatory three (3) year gun specification all to be served consecutively to a six (6) month sentence for having weapons under disability, and failed to review all of the statutory factors announced in R.C. 2929.12."
 {¶ 56} After McLeod filed his brief in this court, the Ohio Supreme Court issued its decision in Foster. In that decision, the court found that R.C. 2929.14(E)(4), which applies to consecutive sentences, unconstitutionally allowed a trial court to increase a felony offender's sentence beyond the statutory maximum based on facts not found by the jury. Foster at paragraphs one and three of the syllabus. However, the court found that the offending statutory sections could be severed from the overall felony sentencing structure. Id. at paragraphs two and four of the syllabus. Thus, trial courts now "have full discretion to impose a sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 57} After reaching this conclusion, the Ohio Supreme Court decided that any case reversed for these reasons should be remanded for resentencing.
 {¶ 58} "The sentences of Foster, Quinones, and Adams were based on unconstitutional statutes. When a sentence is deemed void, the ordinary course is to vacate that sentence and remand to the trial court for a new sentencing hearing. See, e.g., State v. Jordan, 104 Ohio St.3d 21,2004-Ohio-6085, 817 N.E.2d 864, ¶ 23 (where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is to resentence the offender). In fact, in the case of Quinones, the court of appeals, whose judgment we today affirm, vacated the sentence and remanded to the trial court for resentencing.
 {¶ 59} "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 60} "Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66 L.Ed.2d 328.
 {¶ 61} "As the Supreme Court mandated in Booker, we must apply this holding to all cases on direct review. Id., 543 U.S. at 268,125 S.Ct. 738, 160 L.Ed.2d 621, quoting Griffith v. Kentucky, 479 U.S. at 328,107 S.Ct. 708, 93 L.Ed.2d 649. (""[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases * * * pending on direct review or not yet final'")." Id. at ¶ 103-106.
 {¶ 62} The Ohio Supreme Court has stated that a defendant does not waive this issue by failing to raise it in the trial court.Foster at ¶ 30-33. Furthermore, this court must reverse a sentence which is contrary to law, R.C. 2953.08(G)(2)(b), and under Foster's holding, any sentence imposed under R.C. 2929.14(E)(4) is contrary to law.
 {¶ 63} Accordingly, McLeod's conviction is affirmed, his sentence is vacated and this cause is remanded to the trial court for resentencing.
Donofrio, P.J., concurs.
Waite, J., concurs.