OPINION
{¶ 1} James C. Carr, Jr. appeals from his conviction and sentence on charges of aggravated murder, attempted aggravated murder, kidnapping, aggravated robbery, having a weapon while under disability, and firearm specifications.
 {¶ 2} Carr was prosecuted, along with another defendant, Jokova James, for *Page 2 
fatally shooting Dorian Sims and wounding Matthew Fairman during a drug transaction. Rather than paying for the drugs, the State's evidence established that Carr and James pulled guns on Sims and Fairman and demanded cocaine. Fairman opened the trunk of his car, and James removed a bag of powdered cocaine. James then handcuffed Sims and placed him face-down in the back seat of Fairman's car. Carr entered the vehicle and ordered Fairman, at gunpoint, to follow a car driven by James. The two vehicles proceeded to the 1800 block of Danner Avenue, where they stopped. When Fairman stepped out of his vehicle, Carr shot him in the back of the neck. Carr then spun Fairman around and shot him in the mouth. Carr shot Fairman two more times, once in the back and once in the neck, after he fell. Fairman, who was not dead, then watched Carr lean into the vehicle and shoot Sims four times in the head. After Carr and James left, Fairman called 911 on his cell phone. He told the operator that "Jokova and Junie done it." The State's evidence established that Carr's nickname was Junie.
 {¶ 3} Fairman survived the shooting and identified Carr and James in a photo array. Fearing for his life because he had received death threats, Fairman subsequently refused to testify against Carr and claimed he would disappear before trial. As a result, the trial court allowed the prosecutor to depose him pursuant to Crim. R. 15(A). Following the deposition but before trial, Fairman was found dead in the back of a burnt-out car with his hands cuffed behind his back
 {¶ 4} At trial, the State presented evidence that Carr had approached a friend, Kurtis Wallace, immediately after the shooting. Carr told Wallace that he had "popped" two people and that he had to go away because he did not know whether he had "finished Matt." Carr asked Wallace to hold a bag and a gun. Following his arrest, Carr *Page 3 
had a chance encounter with Wallace in the Montgomery County jail. While discussing his case, Carr told Wallace that Fairman would not be a problem as a witness because the deposition would be thrown out and "the guy had been shot in the car and burnt." A jury found Carr guilty on all charges in January 2008, and the trial court imposed an aggregate sentence of 48 years to life in prison.
 {¶ 5} In his first assignment of error, Carr contends the trial court erred in sustaining the State's motion to take Fairman's deposition before trial. This argument implicates Crim. R. 15(A), which provides:
 {¶ 6} "If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition * * *."
 {¶ 7} During a hearing on the State's motion, police detective Daniel Hall testified that he had spoken with Fairman, who feared for his life and the safety of his family. Despite security precautions, Hall testified that two unknown men had been seen outside Fairman's intensive-care hospital room as he recovered from his gunshot wounds. After being released from the hospital, Fairman told Hall that he was leaving the area and going to Atlanta for safety reasons. Fairman later returned to Dayton and was arrested for community control violations. While Fairman was in jail, his grandmother told Hall that he had been receiving death threats. Hall then spoke with Fairman, who stated that certain inmates had warned him he better not testify in court. *Page 4 
Fairman refused to identify the inmates. Fairman also told Hall that he wanted to leave Dayton for safety reasons upon his release from jail. Fairman added that he would not appear as a witness unless he could be relocated to another state. Hall told Fairman that government-assisted relocation was not possible. Based on Hall's testimony, the trial court found a probability that Fairman, a material witness, would be prevented from attending the trial and that taking his deposition was required to prevent a failure of justice. We review this ruling for an abuse of discretion. State v. Smith (March 25, 1998), Lorain App. No. 96CA006331.
 {¶ 8} On appeal, Carr contends the State failed to establish a probability that Fairman would be unable to attend or prevented from attending the trial. Carr notes that Hall never confirmed the threats, that Fairman was in custody at the time of the hearing, and that the trial court relied on "hearsay upon hearsay" to sustain the State's motion. Carr also cites State v. Conley, Marion App. No. 9-04-34,2005-Ohio-6031, for the proposition that a "temporary absence" from the state does not render a witness "unable" or "prevented" from attending trial.
 {¶ 9} Upon review, we find no abuse of discretion in the trial court's prescient ruling that Fairman probably would be prevented from testifying at trial. Detective Hall could not verify the threats at issue because he did not know who made them. Moreover, we doubt whether the maker of the threats would have admitted them to Hall no matter how much investigation he did. In any event, the trial court acted within its discretion in believing the threats. The trial court also did not abuse its discretion in finding that the threats made it probable Fairman would be prevented from testifying at trial. In Smith, supra, the Ninth District Court of Appeals found no abuse of discretion *Page 5 
where the trial court permitted a witness to be deposed under Crim. R. 15(A) after receiving death threats. Finally, Carr cites no authority, and we have found none, that would preclude a trial court from considering hearsay testimony when conducting a hearing under Crim. R. 15(A). Accordingly, his first assignment of error is overruled.
 {¶ 10} In his second assignment of error, Carr contends the trial court violated his Sixth Amendment confrontation rights underCrawford v. Washington (2004), 541 U.S. 36, when it declared Fairman an unavailable witness and allowed the State to use Fairman's deposition at trial.
 {¶ 11} Carr's primary argument is that he lacked a full opportunity to cross examine Fairman because counsel for co-defendant Jokova James also participated in the deposition. At that time, the cases against Carr and James had not been severed for separate trials. Therefore, the deposition proceeded with both defendants and their counsel present. Carr contends this scenario limited his ability to cross examine Fairman, thereby violating his confrontation rights. In support, he cites an affidavit from his trial counsel that was attached to a memorandum in the proceedings below. Carr also argues that the deposition was taken only three months after his arraignment, giving his attorney too little time to investigate. Finally, Carr contends the deposition, as read to the jury, made no distinction between which defendant's attorney was asking questions on cross examination. He asserts that this resulted in substantial prejudice because "the defenses of the two defendants were at odds with each other and there was no way for the jury to know which attorney was asking the question."
 {¶ 12} Upon review, we find no violation of Carr's Sixth Amendment right to confront his accuser. In Crawford, the Supreme Court held that the Sixth Amendment *Page 6 
Confrontation Clause bars the use of a testimonial statement made by a witness who does not appear at a criminal trial unless the witness is unavailable to testify at trial and was subject to cross-examination when the statement was made. In the present case, Fairman made testimonial statements during his deposition, he was unavailable to testify at trial because he was dead, and he was subject to cross examination during his deposition.
 {¶ 13} We find no merit in Carr's argument that taking Fairman's deposition with both defendants participating deprived his attorney of effective cross examination as required by Crawford. Carr contends his attorney would have conducted a "materially different cross examination" if the two cases had been severed prior to the deposition. The affidavit from his counsel, however, provides few specifics about how the cross examination would have been different if James' counsel had not participated in it. In relevant part, the affidavit states:
 {¶ 14} "8. Because the Motion to Sever had been overruled I conducted my cross examination according to the rules of evidence.
 {¶ 15} "9. Specifically, I did not ask any questions that would duplicate the questions asked by Jokova James' counsel.
 {¶ 16} "10. If the deposition had been severed I would have conducted a materially different cross examination." (Affidavit attached to Doc. #300).
 {¶ 17} In paragraph eight, Carr's counsel states that he conducted his cross examination according the rules of evidence. He presumably would have done the same even without the participation of James' counsel. In paragraph nine, Carr's counsel avers that he did not ask questions that would duplicate what James' counsel already *Page 7 
had asked. We note, however, that the trial court allowed the jury to hear the questions asked by James' counsel and Fairman's answers to those questions. We see no Crawford violation arising from the fact that another attorney asked the questions. Finally, in paragraph ten, Carr's counsel states that his cross examination would have been "materially different" if James' counsel had not participated. This averment is too conclusory to establish a Crawford violation.
 {¶ 18} Carr's argument about the deposition being taken three months after his arraignment has little to do with the Confrontation Clause. In any event, he cites nothing to suggest that his attorney was unprepared for the deposition. We note too that he could have requested additional time to prepare if necessary. Finally, we find no Crawford violation arising from the fact that the deposition, as read to the jury, made no distinction between which defendant's attorney was asking questions on cross examination. The identify of the questioner was not as important as the substance of his questions and Fairman's answers to them. On that issue, the trial court gave Carr a choice about how much of the entire cross examination would be admitted. It also edited the cross examination by James' counsel to help alleviate Carr's concerns about potential prejudice. (See, e.g., Trial transcript at 628, 870, 875). In short, Carr has failed to persuade us that the cross examination of Fairman violated Crawford. The second assignment of error is overruled.
 {¶ 19} In his third assignment of error, Carr contends the trial court erred in having Fairman's deposition read to the jury rather than having a videotape played. Carr argues that the trial court's choice deprived the jury of the ability to assess Fairman's credibility by considering his demeanor, gestures, and voice inflections. He further *Page 8 
asserts that the trial court made little effort to determine the feasibility of playing an edited videotape.
 {¶ 20} In response, the State maintains that Carr failed to raise the foregoing issue below. The State contends he challenged the procedure by which the deposition would be read, but not the decision to have it read. In any event, the State claims the quality of the videotape is not good enough to have assisted the jurors in assessing Fairman's credibility. In reply, Carr insists that he did object to having the deposition read in lieu of a videotape.
 {¶ 21} Upon review, we agree with the State that Carr objected only to the way the deposition would be read. In the January 7, 2008 written objection referenced in his brief, Carr objected to the trial court's decision to have the prosecutor and defense counsel read the direct and cross examination questions posed to Fairman. Carr also challenged the trial court's decision to allow a third-party to read Fairman's answers to the questions. Nowhere in those objections did Carr urge the trial court to play a videotape of the deposition. To the contrary, Carr argued that "the only way this testimony can be entered into trial with the minimum of bias is to simply have a court officer read the questions and answers from the transcript to the jury." (Doc. #302 at 3). The following day, Carr's counsel reiterated his objection to the way the deposition transcript would be read. (Trial transcript at 632-633). During a discussion with counsel, the trial court advised that it would entertain a request for an edited videotape to be played for the jury. (Id. at 595-596). Carr's counsel declined to make such a request, stating that he would "do straight transcript[.]" (Id. at 625). Therefore, Carr has waived any objection to the trial court not playing a videotape, and he cannot claim error on *Page 9 
appeal, even under Crim. R. 52(B). State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, ¶ 23. The third assignment of error is overruled.
 {¶ 22} In his fourth assignment of error, Carr contends the trial court erred in overruling his motion to suppress identification testimony. This argument concerns Fairman's identification of Carr in a photo spread. Fairman made the identification while in the hospital days after being shot. During a February 9, 2006 hearing on Carr's motion to suppress the identification, a detective testified that Fairman had been alert and conscious when viewing the photo spread. After the trial court overruled the motion, Carr retained a nurse to review Fairman's medical records concerning his condition at the time of the identification. After that review, Carr moved to reopen his suppression motion. He claimed the nurse's testimony was necessary to assess Fairman's ability to "comprehend, understand, and verbalize his answers" when he made his identification. (Doc. #224). The trial court overruled the motion.
 {¶ 23} On appeal, Carr notes that a pretrial identification must be suppressed if the identification procedure was impermissibly suggestive and the identification itself was unreliable under the totality of the circumstances. See, e.g., State v. Gooden, Montgomery App. No. 19231, 2003-Ohio-905, ¶ 15. He contends the nurse's testimony about his condition may cast doubt on the reliability of Fairman's identification. The State correctly points out, however, that where the identification procedure is not impermissibly suggestive, any question about reliability goes to the weight of the identification. Thus, a trial court considering a motion to suppress need not address suggestiveness if a defendant fails to show that the identification procedure itself was impermissibly suggestive. State v. Harris, Montgomery App. No. 19796, 2004-Ohio-3570, ¶ 19. Carr *Page 10 
does not even argue on appeal that the identification procedure in his case was impermissibly suggestive. In any event, we find nothing impermissibly suggestive about the composition or presentation of the photo spread. Therefore, anything the nurse might have said about the reliability of Fairman's identification would go only to its weight, not its admissibility. The trial court did not err in refusing to reopen the suppression motion. The fourth assignment of error is overruled.
 {¶ 24} In his fifth assignment of error, Carr claims the trial court erred in overruling a motion to dismiss based on a speedy trial violation. Although he mentions both constitutional and statutory speedy trial requirements, he bases his argument solely on R.C. 2945.71, et seq., Ohio's speedy trial statute.
 {¶ 25} Under R.C. 2945.71(C)(2), the State must bring a person against whom a felony charge is pending to trial within two hundred and seventy days after arrest unless the time for trial is extended for one of the reasons found in R.C. 2945.72. Each day the person is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). For a violation of the right to a speedy trial, a defendant may seek discharge from criminal liability under R.C. 2945.73(B). "The merits of a motion for discharge for a violation of speedy trial rights made pursuant to R.C. 2945.73 are determined as of the date of the motion is filed, not when it is decided or when, after a denial, a defendant is brought to trial." State v. Williams, Montgomery App. No. 20104, 2004-Ohio-5273, ¶ 11.
 {¶ 26} Carr's entire argument on the speedy trial issue is as follows:
 {¶ 27} "In the present action, the Defendant executed a time waiver on December 2, 2005 and later withdrew it on February 14, 2006. The Defendant was not brought to trial until January 14, 2008. Even allowing for tolling of the speedy trial clock during *Page 11 
various pretrial motions, under no circumstances can it be said that the Defendant was brought to trial within the required statutory period, and the trial court erred when it failed to dismiss the case against the Defendant based on a violation of the Defendant's right to a speedy trial."
 {¶ 28} Upon review, we conclude that Carr has failed to establish a speedy trial violation.
 {¶ 29} He was arrested on October 7, 2005 and held in jail awaiting trial. He filed a blanket speedy trial time waiver on December 2, 2005. Carr withdrew the waiver on February 14, 2006. He moved to dismiss on June 27, 2006, asserting, in conclusory fashion, that he had not been tried within the required time. In response, the State cited State v.Boles, Montgomery App. No. 18762, 2003-Ohio-2693, for the proposition that the specific time requirements of R.C. 2945.71 no longer apply when a defendant waives his right to a speedy trial and later withdraws the waiver. Instead, the defendant only must be brought to trial within a reasonable time. Id. at ¶ 17. The State then argued that it had attempted to bring Carr to trial within a reasonable time and that he was responsible for all delays occurring after revocation of his waiver. In reply, Carr insisted that the ninety-day time requirement found in R.C. 2945.71 remained applicable. He also argued that the State bore the burden of providing calculations to prove that it had not been exceeded. In a brief entry, the trial court indicated that it was persuaded by the State's argument and overruled Carr's motion. (Doc. #180).
 {¶ 30} On appeal, Carr again asserts that the State failed to bring him to trial within ninety days. The State counters that his time waiver and later revocation rendered the ninety-day requirement inapplicable. Carr responds that, even if the State is correct, *Page 12 
the delay occurring after he unsuccessfully moved to dismiss on speedy trial grounds was unreasonable. He provides no specific argument with citations to the record, as required by App. R. 16, to support his speedy trial argument.
 {¶ 31} We have held that when a defendant revokes his speedy trial waiver the time requirements found in R.C. 2945.71 no longer apply.State v. Saphire (Dec. 8, 2000), Greene App. No. 2000 CA 39, citingState v. O'Brien (1987), 34 Ohio St.3d 7, syllabus paragraph two, andState v. Pusey (July 11, 1991), Shelby App. No. 17-90-1; see alsoBoles, supra. Following revocation of the waiver, a defendant must be tried within a reasonable time. Id. Carr made a blanket speedy trial waiver and later revoked it. As a result, the State was not required to bring him to trial within ninety days of his arrest.
 {¶ 32} Carr urges us to consider the delay between June 2006, when he filed his motion to dismiss for a speedy trial violation, and January 2008, when he went to trial. He argues that this delay was unreasonable. We note, however, that Carr never challenged this particular delay below. He moved to dismiss on speedy trial grounds in June 2006. The trial court overruled the motion in October 2006, and Carr never renewed it prior to his January 2008 trial. The proper inquiry, then, is whether an unreasonable delay had occurred when Carr moved to dismiss on speedy trial grounds in June 2006. We see no unreasonable delay.
 {¶ 33} On February 14, 2006, Carr revoked his speedy trial waiver. On February 22, 2006, the trial court set his case for an April 3, 2006 trial. Carr's attorney withdrew from the case on March 17, 2006, forcing the trial court to continue the trial date. The trial court rescheduled trial for June 10, 2006. That date was vacated, however, after *Page 13 
Carr filed numerous pretrial motions, including his June 27, 2006 motion to dismiss for a speedy trial violation. Having reviewed the record, we find no unreasonable delay preceding Carr's motion to dismiss on speedy trial grounds. Therefore, the trial court did not err in overruling the motion. The fifth assignment of error is overruled.
 {¶ 34} In his sixth assignment of error, Carr contends the trial court erred in overruling a motion to dismiss based on the destruction of crime-scene evidence. This argument concerns the State's failure to preserve Matthew Fairman's automobile. The record reflects that the vehicle was inspected by evidence technicians shortly after the July 2005 shooting and then towed to a car lot. Police removed a hold on the vehicle in September 2005. It was sold for salvage in November 2005. No forensic evidence linking Carr to the shooting was recovered from the vehicle.
 {¶ 35} Following a hearing on Carr's motion to dismiss, the trial court determined that the vehicle had no apparent materially exculpatory value. Assuming, arguendo, that the vehicle was potentially useful to Carr, the trial court concluded that it was not disposed of in bad faith. On appeal, Carr contends the trial court's holding "ignores the potential for finding evidence that would either exonerate [him] completely or point to an additional suspect not known to [him]."
 {¶ 36} The Due Process Clause protects a criminal defendant from being convicted if the State has failed to preserve materially exculpatory evidence or in bad faith has destroyed potentially useful evidence.State v. Bolden, Montgomery App. No. 19943, 2004-Ohio-2315, ¶ 51;State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370. In order to be materially exculpatory, "`evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such *Page 14 
a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" Id. at ¶ 52, quotingCalifornia v. Trombetta (1984), 467 U.S. 479, 489. When evidence is only potentially useful, its destruction does not violate due process unless police acted in bad faith. Id. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'"Franklin, supra, at ¶ 47, quoting State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145, quoting Slater v. Motorists Mut. Ins.Co. (1962), 174 Ohio St. 148, paragraph two of the syllabus, overruled on other grounds, Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552,554.
 {¶ 37} Upon review, we find no error in the trial court's ruling. In overruling Carr's motion, the trial court reasoned:
 {¶ 38} "* * * The Court finds that when the Crown Victoria was released and sold it had no apparent materially exculpatory value. Defendants have been provided the photographs of the vehicle and all other discovery relating to said vehicle. Even if the Crown Victoria was potentially useful evidence, there was no bad faith on the part of the police or the State in the release and sale of the vehicle. The tests on the vehicle and collection of evidence had been completed by the State and storage fees were accruing. Matthew Fairman, the owner of the vehicle, chose not to re-claim the vehicle and the vehicle was sold at auction. Defendants had not requested inspection of the vehicle and the State had no further reason to hold said vehicle. Further, there was testimony that the Crown Victoria has been located despite it being sold." (Doc. #227 at 6). *Page 15 
 {¶ 39} Carr contends the trial court's ruling "ignores the potential for finding evidence[.]" But this argument reinforces the trial court's finding that the vehicle was at most "potentially useful." Therefore, the failure to preserve it did not violate due process in the absence of bad faith, which Carr has not even alleged. Accordingly, the trial court properly overruled his motion. The sixth assignment of error is overruled.
 {¶ 40} In his seventh assignment of error, Carr claims the trial court erred in overruling his motion for Matthew Fairman's grand jury testimony. When Carr filed the motion in June 2006, Fairman still was alive. In support of his motion, Carr claimed there were unspecified inconsistencies in Fairman's statements to police and his later videotaped deposition. Carr opined that "[a] review of the grand jury testimony may show additional inconsistencies and/or contradictions in testimony." Carr unsuccessfully renewed his motion and made the same argument after Fairman's death.
 {¶ 41} Upon review, we find no error in the trial court's refusal to release Fairman's grand jury testimony. "`Crim. R. 6(E) controls the disclosure of grand jury testimony.'" State v. Jackson (March 5, 1999), Montgomery App. No. 17226, quoting State v. Mack, 73 Ohio St.3d 502,508, 1995-Ohio-273. To inspect grand jury transcripts, a defendant must establish a particularized need that outweighs the need for secrecy. Id. A particularized need exists when there is a probability that non-disclosure will deny the defendant a fair trial. Id. "`[A] bald assertion on appeal that [the defendant] needed to examine the testimony of an adverse witness for inconsistencies fails to set forth a particularized need.'" Id., quoting Mack, supra, at 508. A trial court does not abuse its discretion by finding no particularized need when a defendant speculates that grand jury testimony might have revealed contradictions. Id. "`If the use of grand jury testimony *Page 16 
were permitted simply because a defendant claims that the prior statements of a witness could be used for impeachment purposes, virtually all grand jury testimony would be subject to disclosure.'" Id., quoting State v. Cherry (1995), 107 Ohio App.3d 476, 479.
 {¶ 42} In both of his motions, Carr merely speculated that Fairman's grand jury testimony might contradict statements he gave to police or his videotaped deposition. Therefore, the trial court did not abuse its discretion in finding no particularized need for the testimony. Carr's citation to Evid. R. 804(B)(1) on appeal does not alter our conclusion. Carr reasons that the grand jury testimony would have been admissible at trial under the former-testimony hearsay exception. Regardless of whether the testimony would have survived a hearsay objection, the fact remains that Carr failed to show a particularized need for it under Crim. R. 6(E). Therefore, the trial court did not err in denying his motion to obtain the testimony. The seventh assignment of error is overruled.
 {¶ 43} In his eighth assignment of error, Carr contends the trial court erred in overruling his motion to suppress evidence obtained through an illegal vehicle search. This argument concerns a Chevy SUV owned by Carr's former girlfriend, Carolyn Lomax.
 {¶ 44} On October 13, 2006, Carr moved to suppress all evidence taken from the vehicle pursuant to a search warrant issued on October 7, 2005. The motion challenged the sufficiency of an affidavit in support of the warrant and alleged that police had exceeded its scope and made material misrepresentations to obtain it. Following a December 2006 hearing on the motion, the trial court held that Carr lacked standing to challenge the October 7, 2005 search of Lomax's car. Based on the testimony *Page 17 
presented, the trial court found that Carr and Lomax had broken up and stopped living together in August 2005, that Carr had not driven the vehicle or had access to it since then, and that he had no reasonable expectation of privacy in any property found in the car when the October 7, 2005 search took place. (Doc. #230).
 {¶ 45} On appeal, Carr addresses a different issue, namely aprior search of the SUV that he contends took place on August 12, 2005. Carr insists he still was living with Lomax when this warrantless search occurred. Therefore, he argues that he had standing to challenge this search, which occurred at a paint shop where Lomax had dropped off her SUV. Carr contends the trial court erred in holding that he had no expectation of privacy and lacked standing to challenge the alleged August 12, 2005 warrantless search at the paint shop.
 {¶ 46} We note, however, that Carr's October 13, 2006 motion to suppress pertained exclusively to the October 7, 2005 search and evidence seized at that time pursuant to a search warrant. The motion did not purport to challenge, or even mention, a warrantless search occurring on August 12, 2005. Likewise, the trial court's written entry denying Carr's suppression motion addressed only his standing to challenge the October 7, 2005 search. (Doc. #230). Contrary to Carr's argument on appeal, the trial court did not hold that he lacked standing to challenge a warrantless search occurring on August 12, 2005. The trial court did not address that issue, which was not raised in Carr's October 13, 2006 suppression motion. Accordingly, his eighth assignment of error is overruled.
 {¶ 47} In his ninth assignment of error, Carr contends the trial court erred in allowing the State to introduce inadmissible other-acts evidence. This argument *Page 18 
concerns testimony elicited from Kurtis Wallace about a December 2006 conversation he and Carr had in the Montgomery County jail concerning Carr's case.
 {¶ 48} On direct examination, Wallace testified that he told Carr the police would locate Fairman and compel him to testify for the State. According to Wallace, Carr responded: "[I]t won't happen because we already took care of that." Carr then explained "that the guy had been shot in [a] car and burnt." (Trial transcript at 1099-1101). Carr unsuccessfully objected to this testimony on Evid. R. 404(B) and 403(A) grounds. The trial court also rejected an argument that the testimony should be excluded because the State had failed to provide the defense with these statements Carr allegedly had made in jail.
 {¶ 49} On appeal, Carr argues that Wallace's testimony was inadmissible under Evid. R. 404(B) and R.C. 2945.59. These provisions prohibit evidence of other acts of a person when offered to prove his character to show that he acted in conformity therewith. Such evidence may be offered, however, to show other things, some of which are identified in Evid. R. 404(B) and R.C. 2945.59. State v. Smith (1992),84 Ohio App.3d 647, 664. The trial court found that Carr's statements to Wallace were admissible to show consciousness of guilt. A number of courts have recognized that evidence reflecting consciousness of guilt is admissible as an admission by conduct. Indeed, "many acts of the defendant after the crime seeking to escape the toils of the law are uncritically received as admissions by conduct constituting circumstantial evidence of consciousness of guilt and hence of the fact of guilt itself." State v. Behun (Sept. 20, 1985), Portage App. No. 1490, citing McCormick, Evidence (2d Ed. Cleary Ed. 1972) 655, Section 271; see, also, State v. McLeod, Jefferson App. No. 05 JE 15,2006-Ohio-7076, ¶ 30; *Page 19 State v. Farley (Nov. 2, 1998), Clermont App. No. CA98-01-004;State v. Soke (1995), 105 Ohio App.3d 226, 250; State v. Leonard (May 21, 1993), Lawrence App. No. CA92-12. We agree with the trial court that Carr's statements about Fairman were admissible because they showed consciousness of guilt.
 {¶ 50} We also reject Carr's contention that the statements were inadmissible under Evid. R. 403(A). The trial court did not abuse its discretion by failing to find that the probative value of the statements was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Although Carr was not on trial for killing Fairman, his statements to Wallace were highly probative of his guilt on the charges for which he was being tried. The statements implied that he had played some role in Fairman's execution in order to prevent Fairman from testifying. As noted above, this is an admission of guilt by conduct.
 {¶ 51} Finally, in a one-sentence argument, Carr asserts "that the State failed to fully disclose the contends of this alleged admission by the Defendant even though the State issued a report from the detective where Mr. Wallace allegedly advised the detective of the admission." Upon review, we find this argument to be unpersuasive. Carr has failed to identify a particular report or cite anything in the record to support his argument. See App. R. 12(A)(2). Based on our own review of the record, the statements at issue do not appear to have been contained in any police report. According to the State, Wallace did not tell police about the statements Carr made to him in the Montgomery County jail. (Trial transcript at 1066-1067). Instead, Wallace told the prosecutor about Carr's jailhouse statements in the course of a pretrial interview. (Id.). Carr cites nothing obligating the State to disclose the substance of the prosecutor's *Page 20 
interview with Wallace. Under Crim. R. 16(B)(1)(e), the State only was required to provide the defense with the names and addresses of its witnesses. Having been given that information, defense counsel could have attempted to interview Wallace himself. The ninth assignment of error is overruled.
 {¶ 52} In his tenth assignment of error, Carr contends the trial court erred in refusing to allow him to introduce evidence impeaching Wallace's testimony about the December 2006 jailhouse conversation between the two men. In particular, Carr claims the trial court should have permitted him to introduce screen-shots of jail visitation records to prove he and Wallace could not have had the conversation discussed in the ninth assignment of error.
 {¶ 53} After reviewing the records and hearing a proffer from defense counsel, the trial court declared them inadmissible. It found that they were "too voluminous" and that it was "not clear that those records mean what somebody might infer from them * * *." (Trial transcript at 1726). We review the trial court's ruling for an abuse of discretion. State v.Sage (1987), 31 Ohio St.3d 173, 182.
 {¶ 54} During trial, Wallace testified on direct examination about how he and Carr crossed paths in the Montgomery County jail in December 2006. He explained:
 {¶ 55} "I had an attorney visit. I was supposed to have a personal visit, but my attorney visit superceded. And when I got done, the — with talking to my attorney — the CO locked me into the visiting room, the regular visiting room because he had — I don't even know what the reason was. He just had to hurry up. So, the first thing he could [do] was lock me into the visiting room. And Junie was just completing his visit at that time. So, I was just waiting to get transported back to my cell. *Page 21 
 {¶ 56} "So, when we were in there, I was surprised to see him because I hadn't heard anything about the case in about a year or so." (Trial transcript at 1095).
 {¶ 57} Wallace proceeded to testify about Carr essentially implicating himself in Fairman's disappearance and death. Defense counsel later attempted to call a rebuttal witness from the Montgomery County jail to authenticate and testify about screen-shots of jail visitation logs. The trial court discussed the issue with counsel at some length before declaring the records inadmissible. (Id. at 1722). The trial court then allowed defense counsel to make a proffer with regard to the records. Counsel's proffer was as follows:
 {¶ 58} "And [exhibit] I is the compilation of data from the Montgomery County jail regarding Kurtis Wallace, his housing and visitations of the last two years, including the period from December 2006 to seven, which was key of his testimony.
 {¶ 59} "Exhibit J is the visitation records of my client, James Carr, Jr., who going back to 2005, which equally reflects the visitations and where he was housed.
 {¶ 60} "And it is my proffer that I subpoenaed a representative of the Montgomery County jail, would appear today and would testify that these records do indicate that Mr. Carr was housed on the fourth floor while Mr. Wallace was housed on the third floor during the month of December 2006 and January 2007 and that their visitation times for professionalvisits by Mr. Wallace and the times that Mr. Carr had visitation do notoverlap in the manner that would be required for Mr. Wallace's storyabout having been put in the same visiting room after his attorney visitwith Mr. Carr to pan out." (Id. at 1725) (emphasis added).
 {¶ 61} Having examined the records at issue, we conclude that the trial court's *Page 22 
ruling did not constitute an abuse of discretion. Although the records were not particularly voluminous, the trial court nevertheless acted within its discretion in excluding them because they fail to show what defense counsel alleged in his proffer. In particular, the records fail to establish that the visitation times for Wallace and Carr did not overlap sufficiently for Wallace's claim about being placed in a room with Carr to be true. The records actually support Wallace's story.
 {¶ 62} The records, which were identified below as exhibits I and J, reflect that Wallace and Carr both had visits near the same time on December 30, 2006. Carr had a personal visit from Carolyn Lomax. It ended at 14:47 hours. The badge number of the officer handling the visit was 949. On the same day, Wallace was scheduled for a personal visit from his wife, Paula. According to the records, however, Wallace actually received a professional visit instead. This is consistent with Wallace's claim that, on the day he met Carr, a professional visit from his attorney superceded a scheduled personal visit. The jail records further establish that Wallace's professional visit ended at 14:42 hours. Once again, the badge number of the officer handling the visit was 949. Therefore, the records Carr sought to introduce demonstrate that he and Wallace both had visits on December 30, 2006 that ended within five minutes of each other and were handled by the same officer. In light of these facts, it is entirely possible that the officer temporarily placed Wallace and Carr in the same interview room. We certainly find nothing in the records to support Carr's claim that they disprove such a possibility. Accordingly, we see no abuse of discretion in the trial court's exclusion of the records. Because they do not rebut Wallace's testimony or support the proposition asserted in Carr's proffer, the records were subject to exclusion under Evid. R. 403(A). *Page 23 
 {¶ 63} In a final portion of his tenth assignment of error, Carr also contends the trial court erred in not granting a continuance so he could locate investigator Dick Emmons. Defense counsel told the trial court that Carr wanted to have Emmons testify as a rebuttal witness. According to defense counsel, Emmons would rebut detective Hall's testimony that the only person Hall knew with the nickname "Junie" was Carr. Defense counsel claimed Emmons would testify that there were three people in the Dayton area with criminal backgrounds who used the nickname "Junie." The trial court declined to grant a continuance, reasoning: "* * * To me, if there are three Junies in the State of — in the Montgomery County area out of 650,000 people, that number is sufficiently small that Detective Hall may not know who those others are and accept that as fact. So, I will not grant the continuance." (Trial transcript at 1730).
 {¶ 64} Upon review, we find no abuse of discretion in the trial court's ruling. The record reflects that defense counsel did not attempt to contact Emmons until the night before the continuance was requested. (Id. at 1728). Moreover, the fact that Emmons may have found additional "Junies" does not rebut Hall's testimony that he knew only one. Hall himself conceded that there probably were other men who used the same nickname. He just did not know them. (Id. at 1028). Finally, knowing that there were exactly three men who had Carr's nickname would not have helped the jury decide whether it was Carr or some other "Junie" who shot Sims and Fairman. This is particularly true given that Fairman already had identified Carr as the shooter. The tenth assignment of error is overruled.
 {¶ 65} In his eleventh assignment of error, Carr claims his indictment was defective in that it omitted a necessary mens rea element for the offense of aggravated *Page 24 
robbery. Although he did not raise this issue below, Carr citesState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, for the proposition that it may be raised for the first time on appeal.
 {¶ 66} Upon review, we find no merit in Carr's argument. While we do not dispute his reading of Colon, we find no violation of the rule articulated in that case. Even setting aside the Ohio Supreme Court's recent emphasis that the syllabus of Colon is limited to its facts, [1]
 {¶ 67} Carr's indictment simply did not violate the rule articulated in Colon by failing to charge a mens rea element. In Colon, the Ohio Supreme Court considered an indictment for the crime of robbery in violation of R.C. 2911.02(A)(2), which prohibits inflicting, attempting to inflict, or threatening to inflict physical harm while attempting, committing, or fleeing from a theft offense. The Colon court found the robbery indictment defective because a violation of R.C. 2911.02(A)(2) is not a strict liability offense, and the indictment failed to allege a mental state of recklessness.
 {¶ 68} In the present case, Carr was charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which generally prohibits displaying or using a deadly weapon during the commission of a theft offense or in fleeing from such an offense. We have held that Colon does not apply to an indictment charging the deadly-weapon form of aggravated robbery in violation of R.C. 2911.01(A)(1). State v. Smith, Montgomery App. Nos. 21463 and 22334, 2008-Ohio-6330, ¶ 72-73 (citing with approval cases from other appellate districts for the same proposition); State v.Johnson, Montgomery App. *Page 25 
No. 22656, ¶ 53. Based on Smith and Johnson, we conclude that Carr's aggravated robbery indictment did not violate Colon. The eleventh assignment of error is overruled.
 {¶ 69} In his twelfth assignment of error, Carr contends prosecutorial misconduct deprived him of a fair trial. In particular, he challenges two remarks by the prosecutor, one during opening statements and one during closing arguments.
 {¶ 70} In his opening statement, the prosecutor told the jury: "Now, I believe I told you in jury selection that Matthew Fairman is not going to walk through those double doors. He's not going to be able to walk into this courtroom and testify. The reason is that he's now deceased. And you'll hear more about that from another witness." (Trial transcript at 892). In his closing argument, the prosecutor remarked: "* * * [Y]ou will only hear from Matthew Fairman from the grave because Matthew is now dead, and we now know why." (Id. at 1753). Carr did not object to either of the foregoing statements. Therefore, we are limited to a plain-error review. "An error qualifies as `plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." State v. Chapple, 175 Ohio App.3d 658, 662,2008-Ohio-1157.
 {¶ 71} Neither of the challenged statements constituted misconduct at all, much less plain error. The first comment was entirely factual and accurate. Fairman was not going to walk into the courtroom and testify because he was dead. The prosecutor was entitled to inform the jury of that fact. Moreover, the jury later did hear more about Fairman's death from another witness, Kurtis Wallace. We see nothing objectionable about the prosecutor's opening statement. We reach the same conclusion about the second remark. Once again, the prosecutor pointed out that the jury could not hear live testimony from Fairman because he was dead. The prosecutor's final comment, "now *Page 26 
we know why," was a permissible comment on the evidence. It pertained to Carr's jailhouse admission to Wallace about taking care of Fairman, who had been killed and left in a burned out car. The twelfth assignment of error is overruled.
 {¶ 72} In his thirteenth assignment of error, Carr contends he received constitutionally ineffective assistance of trial counsel. His argument concerns defense counsel's failure to object to the above remarks by the prosecutor during opening statements and closing arguments. As explained in our analysis of Carr's twelfth assignment of error, however, the remarks at issue were not objectionable. Therefore, defense counsel did not provide ineffective assistance by failing to object to them. The thirteenth assignment of error is overruled.
 {¶ 73} In his fourteenth assignment of error, Carr claims the trial court erred in overruling his motion for a new trial. As grounds for the motion, Carr argued below that his due process rights were violated by (1) the use of Fairman's deposition testimony at trial, (2) Kurtis Wallace's testimony about Carr's jailhouse statements, and (3) the exclusion of rebuttal evidence challenging Wallace's testimony. We have rejected each of these arguments above under separate assignments of error. Therefore, the trial court did not err in overruling Carr's motion for a new trial. The fourteenth assignment of error is overruled.
 {¶ 74} In his fifteenth assignment of error, Carr advances a claim of "cumulative error." He contends the effect of the errors alleged in his first fourteen assignments of error, even if individually harmless, cumulatively deprived him of a fair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378,397, 2000-Ohio-448. To *Page 27 
find cumulative error present, we first must find multiple errors committed at trial. Id. at 398. We then must find a reasonable probability that the outcome below would have been different but for the combination of separately harmless errors. State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353. In our review of Carr's other arguments, however, we found no multiple errors. Therefore, we find no cumulative error. The fifteenth assignment of error is overruled.
 {¶ 75} Having overruled each of Carr's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
DONOVAN, P.J., and GRADY, J., concur.
Copies mailed to:
Mathias H. Heck, Jr. Carley J. Ingram Marshall G. Lachman Hon. Michael T. Hall
[1] See State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749. *Page 1